CASE 64—ACTION BY W. M. SHEMWELL AGAINST OWENSBORO & NASHVILLE R. R. CO. FOR DAMAGES FOR PERSONAL INJURIES.—FEB. 5.

# Shemwell v. Owensboro & N. R. R. Co.

### APPEAL FROM LOGAN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. AFFIRMED.

MASTER AND SERVANT—DANGEROUS PREMISES—PROMISE TO REPAIR—EFFECT—KNOWLEDGE OF SERVANT—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE. .

Held: 1. Where plaintiff was injured by the falling of the roof of a pumping house which had become so defective that it was unable to sustain plaintiff's weight when he went upon it to extinguish a fire, and plaintiff was the only person employed by defendant at that place, plaintiff's knowledge as to the condition of the roof was the knowledge of his employer.

2. Where defendant promised to repair a defective roof over a pumping station where plaintiff was the sole employe, such promise did not make defendant an insurer of plaintiff's safety during the time reasonably necessary to make the repairs, but only relieved plaintiff from the charge of contributory negligence in continuing at his work with knowledge of the defective conditions, unless such defects were so obviously dangerous that none but a reckless person would venture on the roof until repaired. .

3. Where plaintiff, employed to operate a railroad pumping station, notified defendant of the defective condition of the roof over the same, and received a promise that it should be repaired, and plaintiff was injured by the collapse of the roof while he was walking thereon within a week after the promise to repair, the expiration of such time was not so unreasonable as to deprive plaintiff of the right to continue to work, relying on defendant's promise to make repairs.

4. Where plaintiff, who was injured by the falling of the roof of a pumping station at which he was employed while he was walking thereon in extinguishing a fire, had notified defendant's superintendent that the roof was defective, but there was no showing that such notice was to the effect that the roof

was so defective as to be unsafe to go upon, it would be presumed that the notice referred only to the defects affecting its purpose as a roof, so that the promise to repair did not constitute an undertaking to make the roof safe to walk on.

5. Where plaintiff had knowledge that the roof over defendant's pumping station, in which plaintiff was the sole employe, was unsafe to go upon, defendant's promise to repair the roof could not relieve plaintiff from contributory negligence in going on it before it had been repaired, in order to extinguish a fire which had been communicated to the roof.

6. Where plaintiff was injured by the falling of the roof of a pumping station in which he was employed, which he knew to be defective and dangerous to go upon, the direction of defendant that if fire occurred on the roof, which plaintiff could not reach with a hose, he must go on the roof and put out the fire, did not relieve plaintiff from contributory negligence in going on the roof, before it had been repaired, to extinguish a fire.

E. B. DRAKE, FOR APPELLANT.

### POINTS.

1. A demurrer admits the facts stated in a pleading to which said demurrer is filed.

2. A servant employed to have charge of a water station is bound to discharge his duty and save said property from destruction from fire or other casualty, if in his power to so do.

3. A servant must obey the instructions of the master, however hazardous.

4. A person is in duty bound morally and legally to protect the life or property of the master, and if in an attempt to do so, he is injured, contributory negligence can not be presumed or pleaded.

5. The master must furnish a safe place as well as safe appliances for the use of the servant.

6. It is not the duty of a servant in charge of a building to see the defects in the roof.

7. A servant has the right to rely for a reasonable time upon the promise of the master to repair defective machinery or appliances or premises.

8. Where an occurrence is produced by the negligence of the master which puts in jeopardy the life or property even of the master and the servant is employed, it is not negligence *per se* for him to attempt to extinguish the fire.

## CITATION OF AUTHORITIES.

Watson on Damages for Personal Injuries, secs. 101, 102, 103, 110; Breckinridge Company (Limited) v. Hicks, 94 Ky., 362; Louisville & Nashville R. R. Co. v. Foley, 94 Ky., 220; Louisville & Nashville R. R. Co. v. Walton, 13 Ky. Law Rep., 460; Weatherford Mineral Wells and Northwestern Ry. Co. v. Duncan, 31 S. W. R., 562; Becker by &c. v. Louisville & Nashville R. R. Co., 22 Ky. Law Rep., 1893; Louisville & Nashville R. R. Co. v. Smith, 13 Ky. Law Rep., 974.

WILBUR F. BROWDER, ATTORNEY FOR APPELLEE.
J. C. BROWDER, OF COUNSEL.

## POINTS.

1. The master's promise to repair defective machinery within a reasonable term, will not authorize a recovery for injury to the servant resulting from its use within that time, where the peril was imminent and the danger patent to the servant.

2. Where one is injured in attempting to extinguish a fire caused by the negligence of another, no action will lie against the latter, the negligence not being the proximate cause of the injury.

## AUTHORITIES CITED.

Mellott v. L. & N. R. R. Co., 101 Ky., 212; Wood on Master and Servant, sec. 326; 2 Thompson on Negligence, sec. 15; Shearman & Redfield on Negligence, sec. 94; Cooley on Torts, 559; Wharton on Negligence, sec. 214; Bogenschutz v. Smith, 84 Ky., 338; L. & N. R. R. Co. v. Hinden, 16 Ky. Law Rep., 841; Breckinridge Coal Co. (Limited) v. Hicks, 94 Ky., 362; Bell & Coggeshall Co. v. Applegate, 23 Ky. Law Rep., 470; Gulf C. & S. F. R. R. Co. v. Brentford, 79 Texas, 619; I. & St. L. R. R. Co. v. Watson, 33 A. & E. R. R. Cases; Mo. Furnace Co. v. Abend, 117 Ill., 144; St. L. & A. T. R. R. Co. v. Lemon, 55 Ark., 483; Belair v. Chicago & C. R. R. Co., 43 Iowa, 662; Green v. Minn. & C. R. R. Co., 31 Minn., 248; Stevenson v. Duncan, 73 Wis., 404; Eureka Co. v. Bass, 81 Ala., 200; Hinchey v. M. R. R. Co., 17 J. & S., 406 (N. Y.); Seale v. Gulf C. & S. F. R. R. Co., 65 Texas, 274; Cook v. Johnson, 58 Mich., 437; Pike v. G. T. R. R. Co., 39 Fed. Rep., 255; Logan v. Wabash R. R. Co., 70 S. W. R., 734; Ganz v. Chicago, M. & St. P. Ry. Co., 98 N. W. R., 575; Liming v. I. C. R. R. Co., 45 Am. & Eng. R. R. Cases, 581.

Shemwell v. Owensboro & N. R. R. Co.

BENJAMIN D. WARFIELD, FOR APPELLEE.

### ADDITIONAL POINTS.

1. If appellant is to recover at all it must be upon the ground that the order of his superior to go upon the roof to put out the fire was an implied assurance that the roof was safe for that purpose. But there was no order to go upon any particular part of the roof. The only reasonable construction of the order is that it was a direction to go to some point on the roof from which the hose could be used with effect. In selecting a place plaintiff was to use his own judgment. There was no implied assurance that every part of the roof was safe to stand upon.

2. Appellant's opportunity to know the condition of the roof was better than that of any other person, and he alleges that the cross-beam which gave way "appeared to be sound as far as he could observe or had any way of knowing," and so far as appears, the only knowledge which appellee had of the condition of the roof, was that knowledge which it derived through appellant. Appellee was the only employe or representative of appellant who worked at, or was regularly present at, the water tank, and in the very nature of things his knowledge of its condition was greatly superior to that of any one else. If, therefore, that part of the roof appeared to appellant to be sound, and he, the servant exclusively in charge, had no means of knowing that it was unsound, it can not be said that appellee knew, or had any opportunity to know, that it was unsound, and it is certain that appellant's opportunity to know that it was unsound was at least equal to that of appellee.

3. Again, as to the promise to repair, there is no allegation that there was ever any promise to repair the roof, so as to make it safe to stand upon.

OPINION OF THE COURT BY JUDGE O'REAR—AFFIRMING.

Appellant was the keeper of a water tank and pumping house on appellee's railway. He was the sole agent or servant in charge of, or connected with, that place. His principal duty was to operate the engine that pumped water into a large tank from which the locomotives were supplied. He alleges that on an occasion the smokestack of the boiler connected with his engine became so out of repair that it

deflected sparks onto the roof of the little building in which the engine was situated, setting fire to the roof; that he went upon the roof to put out the fire, when it, by reason of its rotten condition, gave way, letting him fall to the ground and injuring him. He sued the railway company for the damages which he alleges he sustained by reason of this injury. The negligence of the railway company of which he complains is that it had negligently permitted the covering of the roof which was made of boards or planks to be and become rotten, negligently permitted a cap of covering of the smokestack to be and remain so that sparks were thrown directly upon the roof, and negligently refused to furnish proper fire hose "to be there in case of fire," and negligently refused to repair or remedy the same "after notice repeatedly," though it had promised to do so; that the roof caught fire because of the negligence above set out; and that, because of the absence of proper fire hose, he was compelled to, and did, go upon the roof to put it out, as above stated. His petition sets out that while he was "putting the last water upon said burning housetop, and while he had his feet securely put in an opening in said roof, and which he thought was sound enough to hold his weight and keep him from falling, said foothold gave way," etc. A demurrer was sustained to the petition. An amended petition was filed, reiterating many of the averments of the original petition, but amplifying them in some particulars. He says that he was employed to look after and protect the buildings at that pumping station; that he believed the building was sufficiently strong to support his weight, and while upon the building, attempting to put out the fire, "he placed his foot upon a crosspiece or beam of said building, which appeared to be sound, so far as he could observe or had any way of knowing, and which he alleges that defendant

Shemwell v. Owensboro & N. R. R. Co.

had permitted to remain there so long that it had become rotten and unsafe (he does not allege that defendant was negligent in failing to learn earlier of the actual condition of this crossbeam), all of which was produced by the said act of defendant in failing to have a proper and sound roof, when they had agreed to do so, and when they had been informed of its rotten condition, and knew of same, and knew of its increased danger from fire," He alleges "that defendant did know that all these things existed, and promised to repair same only a few days or within a week of said fire, and he did rely upon said promise, and continued to work there," etc. In alleging more specifically the knowledge of the railway company and its promise to repair, he further says in the amendment: "The said covering of said engine house caught fire not more than a week prior to his injury, but he was enabled to put it out by the use of a hose; that he then went to the supervisor of bridges or water stations, or at least to the defendant's agent and employe who was his superior and in control of said water station, and who had supervision of all water stations, and informed him that same had been afire, and also informed him of the dangerous condition of the building, and also informed him that he had been able to put same out, and also informed him of the great danger of a recurring fire, and the possible destruction of said building and said machinery, which was worth $500 or $1,000; and it was then that the said defendant, by its superior officer and supervisor of water stations, then and there agreed and promised to and with this plaintiff to repair and fix same, and instructed him that if said fire occured again, and he could not reach same with the hose, that he must go upon said building and put same out." These are the strongest allegations of the pleadings for and

against appellant upon the point upon which the case was made to turn. The circuit court sustained a demurrer to this amendment also. Appellant declining to plead further, his suit was dismissed, and he has appealed.

Under our code system of practice, the object of all pleadings is to set forth the facts upon which the parties rely in seeking relief or making defense, and to join an issue thereon. Legal conclusions and circumlocutory statements will be ignored in favor of facts explicitly stated in testing the sufficiency of the pleading. The court looks alone to the well-pleaded facts, and applies the law thereto.

Negligence is the failure to do something that the doer, in the exercise of ordinary care, should have done. The employer's duty in this case, it is claimed for appellant, was primarily to furnish him a safe, or at least a reasonably safe, place in which to do his work. With certain recognized limitations, this will be accepted. The two latest cases from this court in which that matter is discussed are Pfisterer v. Peter & Co. (decided Feb. 2, 1904) 117 Ky., 501, 25 R., 1605, 78 S. W., 450, and Wilson's Administrator v. Chess & Wymond Co. (this day handed down) 117 Ky., 567, 25 R., 1655, 78 S. W., 453. Among these limitations are these: If the laborer knows of the defective condition of the premises, or if their condition is so obvious that he could have known of it by the exercise of ordinary care on his part, he assumes the risk or injury arising from such defect. The promise of the employer to repair will be noticed further along. But in no state of case is the employer an insurer of the safe condition of his premises. His undertaking is only an implied one. The defective condition must be such that the employer actually knew of it, or by the exercise of ordinary care on his part, or on the part of his servants in authority and in charge, could have

known of it, before he is liable therefor to a servant. The law imposes neither an impossible nor an unreasonable duty upon either the employer or the employe. Applying these principles to the facts of this case as the pleadings stand, the employer did know actually of the defects complained of, because its superintendent of bridges and water stations had been told of it. So the petition alleges. It further shows by whom and when he was told, to wit, about a week before the accident, and by the plaintiff himself. As the petition as amended does not show that appellee had any other knowledge or means of knowledge as to conditions at this pump station than it acquired through appellant, the case is considered alone in that aspect.

Plaintiff was the only person there, or required to be there, so far as the pleadings show, representing appellee. The eyes, ears, judgment, opinion, and experience of its employe in charge is its way of learning such things. The law therefore imputes to the corporation just what these representatives see, hear, and know in the course of their respective duties, as affecting the condition of its property and appliances. Appellant being the sole person present at the water station representing appellee, his knowledge would be its knowledge, and therefore his negligence would be its negligence, as between it and third persons. When appellant reported the conditions to his superior, with a view of shifting his responsibility to his employer, as between themselves, on account of conditions there, his recital of the conditions to his superior became the knowledge of the employer, as affecting its duty to appellant. Consequently appellee knew just what appellant told his superior about these conditions. Besides, the defective smokestack and insufficient fire hose, he says he told his superior that the roof was rotten. He does not say that he told him just

how rotten it was. But presumably he told him that it was so rotten that it was inadequate for the purposes for which it was intended, namely, to turn sunshine and rain, and was more liable, by reason of its condition, to ignition from the sparks falling from the smokestack. The language of the petition indicates that this was the probable extent of appellant's information to the superintendent. But, if he in fact told the superintendent that it was so rotten as not to bear the weight of a man, appellant had just the same information on that subject that the superintendent had, viz., what appellant had seen, and his opinion and judgment based thereon. Then, if appellant, with as much actual knowledge of the condition of the roof as his employer had, went upon the roof, and was injured by reason of its defects, the employer is not liable to him. If on the other hand, neither of them actually knew of the real condition of the roof—the appellant, because he had not sufficiently inspected it, and the employer, because its agent in charge (appellant himself) had failed to notify it, of the condition—the employer is not liable, because ordinary care on its part was to require an inspection and report on the conditions by its only servant in charge. Its failure consequently to exercise that care was because appellant had himself failed to exercise ordinary care in acquainting himself of the conditions and reporting it. The employer's knowledge is theoretical—in fact, an imputed knowledge. It was bound to come through the head of some employe; the petition does not show that it was the duty of any other employe than plaintiff himself to even examine that building. In fact, he says he was employed "to look after it," which means to care for it as the person in charge. The knowledge of the owner can not rise above his source of information. As between the employer and third persons,

it is true, there will be imputed to the former all that his servant in authority knew, or by the exercise of ordinary care could have known, about it.  But as between the employer and the very servant who was solely in the custody, and whose duty it was to know and report the exact conditions to the master, their knowledge as to conditions arising while the premises are in the custody of that servant must of necessity be the same, particularly in the absence of any showing that the master had otherwise acquired knowledge on the subject.

It is insisted, however, as the master had promised to repair the defect, and had requested the servant to in the meantime continue in the use of the premises, that the risk then and thereby became the master's for a reasonable length of time.  One week after such promise is not an unreasonable length of time within which the servant might properly have relied on the master to make the repairs required in this case.  But the rule is not, as seems to be assumed, that the master meantime becomes an insurer to the servant of the safety of the premises.  He does not.  It relieves the servant of the charge of contributory negligence in the matter of continuing at his work with knowledge of the defective conditions, unless such defects are so obviously dangerous as that none but a reckless person would venture upon them.  In the latter case the servant, notwithstanding the master's promise to repair, himself takes the hazard of his folly.  Mellott v. L. & N. R. Co., 101 Ky., 212, 19 R., 379, 40 S. W., 696; Wood on Master and Servant, section 326; Shearman & Redfield on Negligence. section 214; G. C. & S. F. R. Co. v. Brentford (Tex. Sup.) 23 Am. St. Rep., 377, 15 S. W., 561, and note p. 385, 23 Am. St. Rep., Missouri Furnace Co. v. Abend, 107 Ill., 44, 47 Am. Rep.,

425; Eureka Co. v. Bass, 81 Ala., 200, 8 South., 216, 60 Am. Rep., 152.

In the instant case, appellant, as has been suggested, probably notified his superior of the defects in the roof only as affecting its purpose as a roof. If appellant had been injured by the roof falling in upon him (and that danger had not been a patent one), or by reason of its leaky condition, he would have been protected against the damages. But it is not shown or claimed that he notified his superior that the roof was so rotten as to be unsafe to get upon, and therefore there was no promise or undertaking by the superintendent to repair such a defect, or to take the consequences upon the employer meantime. The promise to repair, and the assumption of consequences during repairs for a reasonable time, necessarily are referred to the particular defects which the parties were discussing. On the other hand, if the notification by appellant was that the roof was unsafe to go upon, knowledge of that fact was with appellant, and no promise to repair could relieve him of the contributory negligence of going upon it while it was in that condition. For if it was that unsafe, it meant it would give way under the weight of a man, and, if it gave way, it was almost inevitable that he would be hurt by the fall. Nor does the direction of a master to the servant to place himself in an obviously dangerous situation—one that none but a reckless person would assume—relieve the servant of his own negligence in acting.

The judgment is affirmed.