## Kentucky Distilleries and Warehouse Company v. Johnson.

(Decided February 7, 1922.)

### Appeal from Franklin Circuit Court.

Master and Servant—Personal Injuries—Impairment of Power to Earn Money—Evidence.—In an action for damages for personal injuries resulting from an explosion from whiskey gases, the issues were properly submitted to the jury and the amount of the recovery does not appear excessive.

T. L. EDELEN, GROVER SALES and PERCY N. BOOTH for appellant.

LESLIE W. MORRIS for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

The judgment for $5,500.00 in favor of appellee Johnson, from which this appeal is prosecuted by the Kentucky Distilleries and Warehouse Company, was rendered by the Franklin circuit court in an action by Johnson against the warehouse company for damages for personal injuries suffered by him through an explosion, which it is averred was the direct and proximate result of the carelessness of the superior agents of the warehouse company in charge of its business in neglecting to instruct Johnson, an inexperienced person, in the method of using lanterns about tanks in which there were whiskey gases. Johnson's injury was occasioned by an explosion of alcoholic gases which had accumulated in a huge covered tank in which

had been stored during the previous day a large quantity of whiskey for bottling purposes, and which whiskey at the time of the explosion had been drawn off and bottled. The tank was on the third floor of the warehouse and the accident happened at night. Johnson, who had worked the previous day, was at home when the warehouse company sent a man to request Johnson to return to the warehouse and do some work that night. Using an ordinary railroad lantern to enable him to see, Johnson left his home about eight o'clock that night and went to the warehouse. On entering the place the foreman, Mr. Devitt, said to Johnson: "Hello, Johnson, I am glad to see you. I think we are about out of whiskey," meaning that the tank, out of which the whiskey for bottling purposes was drawn, was about empty. The foreman then instructed Johnson to take the keys and a lantern, or lanterns, and go to the third floor and empty about ten barrels of whiskey into the tank so as to provide work for the night shift which was then on duty. Johnson testifies that the foreman said: "Hello, Johnson, I am glad to see you. I think we are about out of whiskey. Take these keys and this lantern and go up and *look in the tank and, if it is empty,* dump about ten barrels out. I don't want the girls to get out of work." Johnson then testified that at the time the foreman thus spoke to him he (Johnson) had in his hand his lantern which he had brought from home and that he started to get one of the company's lanterns setting on the shelf. Seeing this the foreman said: "Leave that lantern to see how to label by." Whereupon Johnson went over to the other side of the shelf and took another company lantern, at the same time the foreman said: "Take that lantern and *your little lantern,* and leave this one for the girls to see how to label by." Johnson was then asked:

"Q. How came you to take your lantern? A. He told me to. Q. And told you to do what now? A. To look in the tank and see if the whiskey was all out, and dump ten barrels if the tank was empty. Q. And told you to take your lantern? A. Yes, sir. Q. Did you do that? A. Yes sir, I did. Q. Where was the tank, Mr. Johnson? A. It was on the third floor. Q. Did any one go with you? A. Mr. Poynter. Q. Tell the jury what happened when you were up there, and what caused it, and all about it. A. I taken the lid off of the tank and held my lantern to see if it was empty, and the fumes

and gases just sucked the blaze from the lantern and exploded. Q. Where did you have the lantern at the time it exploded? A. In the top edge of the tank in this hand. (Indicating.) Q. Did you put the lantern in the tank? A. No. Q. When it exploded what happened, Mr. Johnson? A. It just caught me afire; when the lantern exploded it just flashed out—popped about like a cannon . . . I was burned on my face and my head —burned my hair all off—and both hands burned too there nearly to the elbow.''

It appears from the evidence that the company kept at the warehouse and bottling works several safety lanterns intended for use where there were alcoholic gases; that an ordinary, open lantern was likely to ignite such gases and cause an explosion; that this latter fact was generally known and understood by persons experienced in working around tanks containing whiskey, and that the foreman and superintendent of the warehouse and bottling plant knew these facts before the injury of appellee Johnson; that Johnson was an inexperienced person in the work of examining a tank to discover whether there was liquor in it, and did not know of the danger incident to using a lighted lantern of the ordinary type around such tank; that the rules of the government regulating the bottling of whiskey forbid the mixing of liquor of different seasons and required that the tank be entirely empty before other whiskey of another season was dumped therein; that the company kept a long pole called a plunger near the tank with which to test the depth of the whiskey in the tank, but that Johnson either did not know of the use of the pole, or did not on account of the instructions of the foreman to look into the tank, employ it on the night of his injury; that only about ten or fifteen minutes before the accident the foreman, Devitt, and another had gone to the tank on the third floor and unlocked and examined it to see if it contained whiskey, and that in making said examination the safety lantern which they employed was caused to go out by the rise of excessive alcoholic gases from the tank.

Appellant insists on a reversal of the judgment for three reasons set out in its brief as follows:

(1) The damages of $5,500.00 are so grossly excessive as to appear to have been given as the result of passion and prejudice, and the defendant is, therefore, entitled to a new trial.

(2)   The instruction as to the measure of damages was erroneous, (a) as there was no proof of permanent injuries; and (b) as said instruction failed to limit plaintiff's right of recovery to the damages resulting from such injuries as the jury believed from the evidence to be reasonably certain to result from the negligence of the defendant.

(3)   There being a safe and an unsafe way in which to do the work, and plaintiff, an experienced workman in this character of work, having voluntarily adopted the unsafe method, thereby causing his injuries, a peremptory instruction should have been given in favor of defendant.

1.   We are unable to agree with counsel for appellant that the verdict is so grossly excessive as to appear to have been given as the result of passion or prejudice. If the appellant Johnson was entitled to recover at all for his injuries, and we think he was, the amount awarded him was none too great considering the excruciating pain, loss of time, and permanent impairment of his power to earn money sustained by him.   Johnson   was   badly burned by the explosion, the flesh from his hands dropped away for weeks after the accident and the bones were exposed, the hair was all burned off his head and his face scarred.   The membranes of his nose, mouth and throat were burned to such an extent that he was unable to eat solid food for a long time, and his arms were burned, as was also his body to a less extent.   The evidence shows that for weeks after the accident the wounds on his arms and hands were such that they stuck to the bed clothing. He could not sleep or rest on account of the intense pain. Moreover, it is shown in evidence that he lost much time on account of the injury and was put to quite an expense for nursing and medical attention.   His physician testifies that his hands are permanently injured by the burns. The flesh which fell away from the bone was replaced by what is termed scar tissue, which, it is said, performs but one function, that of filling in and covering other tissue. This scar tissue has no glands or nerve centers, and consequently has no strength. It gives the patient trouble by contracting and causing pain.   In addition to all these things Johnson was badly scarred and disfigured.   There were two trials of the case in the Franklin circuit court, the first one resulting in a verdict for $4,000.00, but a new trial being granted the second verdict was for

$5,500.00. This we do not think was excessive. It certainly does not strike one at first blush as being grossly excessive, and we are not warranted in setting aside a verdict of a jury in a case like this unless the award is so great as to impress one at first blush as being grossly excessive, and to have resulted from passion or prejudice on the part of the jury.

2. The only instruction of which complaint is made is the one on the measure of damages. It reads:

"If the jury finds for the plaintiff they will allow him such sum in damages as they may believe from the evidence will fairly and reasonably compensate him for his physical and mental suffering, if any, of either, and for the permanent impairment, if any, of his ability to earn money, that may have directly resulted to plaintiff from his injuries, if they were caused by the negligence of the defendant or its servants to not exceed the sum of $10,000.00, the amount claimed in the petition."

This instruction has been given in substance if not in exact words by trial courts throughout the state so often in cases similar to the one under consideration, and approved by this court on appeal, that it seems hardly necessary to discuss its merits or do more than call attention to a few of the cases in which the instruction was approved: Paducah Traction Co. v. Burradell, 31 Ky. L. R. 1052; L. & N. R. Co. v. Scalf, 155 Ky. 273; L. & N. R. R. Co. v. Cook, 128 S. W. 81; L. & N. R. Co. v. Moore, 150 Ky. 692; City of Georgetown v. Groff, 136 Ky. 662; Southern Railway Co. v. Goddard, 121 Ky. 567; See also Hobson on Instructions to Juries, pages 27, 28 and 29.

It is said, however, by counsel for appellant that there is no evidence on which to base an instruction for permanent impairment of the power of Johnson to earn money. On this point Johnson testified that his hands were weak, that he did not have much grip and could not do the work which he had been accustomed to doing, and did not have the strength in his hands that he had before the injury. As said above, his physician having testified that the flesh, including the muscles of his hands, had sloughed as a result of the burns, so that the bones were exposed, and that this flesh was replaced by scar tissue in which there are no glands, blood vessels or nerves, and can never be, it appears that there was abundant evidence upon which to predicate an instruction to the jury allowing damages for permanent impairment of the power of

Johnson to earn money. It is further said in criticism of said instruction that it fails to properly limit the recovery for permanent impairment. This criticism is based upon the cases of L. & N. R. R. Co. v. Daugherty, 170 Ky. 10, and L. & N. R. R. Co. v. Logsdon, 114 Ky. 746. In the first opinion we said that no recovery for future impairment of power to earn money could be had without the proper qualification, that it must be such as the jury may believe from the evidence to be reasonably certain to result from the negligence of appellant. The facts in those cases were different from the ones here. The impairment of the power of Johnson to earn money is as certain and definite as if he had lost a hand or foot, the only question being the extent of the impairment, and this question was properly submitted to the jury by the instructions given by the trial court.

3. No rule is better' established in personal injury cases than that which prevents recovery by a plaintiff for personal injury, if in doing his work he voluntarily selects an unsafe way when there is a safe way to perform it, and his selection of the unsafe way is the proximate cause of his injury; but this rule does not fit the facts of this case, either with respect to the lanterns employed by Johnson or the method adopted by him to determine whether the tank contained whiskey. If Johnson did not know of the explosive nature of gases arising from whiskey, and he says he did not, and did not know that there was a difference between the safety lanterns provided by the warehouse company and the common railroad lantern which he used for lighting his way from home to the warehouse, he so testified, and he had not been instructed in these matters by the foreman or some one superior in authority to him at the warehouse, the rule could not be applied to him. Neither could the rule be applied if Johnson was directed by the foreman, Devitt, to go and unlock the tank and look in it and see if there was whiskey therein, if he did not know that the lantern was likely to ignite the gases, even though he may have known of the plunger, for under such circumstances Johnson was not charged with knowledge of an unsafe and a safe way to perform the inspection of the tank. These questions were all properly submitted to the jury by instruction No. 1, and the jury having determined that Johnson was ignorant of the explosive nature of the whiskey gases, and that he had not been instructed con-

cerning their danger by the foreman, or any one else at the warehouse, and did not know of the difference in safety between his own lantern and that of the company when employed around a tank in which there were whiskey gases, the lower court as well as this court was concluded thereby. We, therefore, hold that the appellant warehouse company was not entitled to a directed verdict in its favor.

Judgment affirmed.