## Steely v. Great Atlantic & Pacific Tea Co.

(Decided Dec. 4, 1934.)

GOLDEN, GILBERT & GOLDEN for appellant.

W. T. DAVIS for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Earl Steely instituted this action against the Great
Atlantic & Pacific Tea Company for damages for per-
sonal injuries sustained by him while in the employment
of the latter, and from a judgment entered in accord-
ance with the directed verdict dismissing his petition is
prosecuting this appeal.

his petition, appellant alleged in substance that
appellee negligently failed to furnish him a safe place
in which to work and safe and necessary appliances
with which to perform his work, and that by reason of
such negligent failure upon its part, a stack of heavy
boxes fell on and severely injured his foot and leg.

In a second paragraph he alleged that appellee is a
company coming under the provisions of the Workmen's
Compensation Act (Ky. Stats. sec. 4880 et seq., as
amended), but that it had not accepted the provisions
thereof as to him and that he was not working under
its provisions at the time of the accident; that it had
employed more than three men and in fact a large num-
ber of men in the same work he was doing; that his in-
juries grew out of the accident arising out of and in the
due course of his employment.

By special demurrer and plea to the jurisdiction of
the court, appellee alleged facts to show that it was op-
erating under the provisions of the Workmen's Com-
pensation Act and that appellant had signed the register
agreeing to work under the provisions thereof.

By agreement of parties, a trial before a jury to
determine the issues made by this plea resulted in a ver-
dict finding for plaintiff. Thereupon appellee filed an-
swer and in addition to a general denial of the allega-

tions of the petition affirmatively pleaded assumed risk and contributory negligence.

Appellant filed a reply traversing the affirmative allegations of the answer, and at the close of the evidence on the issues thus made, the court sustained appellee's motion for a peremptory instruction in its favor and entered the judgment appealed from.

According to the evidence of appellant, he had been at work for appellee as an extra clerk for about three months prior to the accident. He had previously worked for it and had also been employed as a clerk in Krogers, the I. G. A., and other grocery stores. The business of appellee where appellant was employed was conducted in a large room. The storeroom proper was in the front, the room being divided by a sort of partition formed by a large refrigerator and by lattice work with an opening for passage from one portion of the room to the other. The rear of the room as thus cut off was used for storing merchandise. About 8 o'clock on the evening of the accident, appellant was waiting on a customer and had filled all of the order except some rice. Finding that the supply of rice in the storeroom had been exhausted, he went to the wareroom to procure a further supply. He hunted around, found a box of rice, and while stooping to pick it up some cartons of canned peaches stacked against the wall fell and injured his foot and leg. He testified that the room was so poorly lighted that he could not see the conditions and that he did not know when or how the boxes which fell upon him were stacked; that the box of rice was five or six feet from the stack of boxes which fell; and that if the room had been properly lighted he could have seen the falling boxes in time to have gotten out of the way. He stated that there was a 60-watt light over the manager's desk in the corner of the wareroom and that there were other lights in the room, but they were not burning; that the manager had given orders to the employees not to permit more than one light to burn in the wareroom at a time in order to save expenses. After appellant first announced he had no further evidence to offer, appellee made a motion for a peremptory instruction, and during the argument in consideration of this motion, appellant's counsel asked that they be permitted to reopen the case and recall appellant for further examination. When recalled, appellant testified that there was a post and a stove between the light over the manager's desk

and the place where he was working at the time of the accident. When asked whether the floor in the storage room where the groceries were stacked was slippery or whether it would give when one walked on it, he stated: "It would creak when you walked on it like it would give." When asked to testify as best he could what caused the boxes to fall, he stated: "There was a crack like a joist broke or like the floor had give * * * I heard that noise just as they was coming over."

On cross-examination he stated that he went back to the room the next morning and saw a broken place in the floor and gave as his opinion that it was caused by the falling of the boxes.

It is first argued by counsel for appellant that appellee negligently failed to exercise ordinary care to provide appellant with a reasonably safe place in which to perform his work. The only case cited and relied on is that of L. & N. Ry. Co. v. White's Adm'r, 167 Ky. 244, 180 S. W. 353. In that case it appears that among other things in a freight car were several bundles of doors weighing altogether about 1,100 pounds. These doors were setting upon end, one bundle against the other and resting against the side of the car. Other merchandise was piled up against the doors so as to prevent them from falling. After the car had been placed on the siding for the purpose of being unloaded, White, who was working for the consignee of the doors, went to the car by invitation or request of the station agent for the purpose of unloading the doors, and while in the act of so doing and because of the removal of other merchandise they fell upon him killing him instantly. It was held in effect that one invited by the railroad company to enter a freight car for the purpose of unloading goods was under no duty to inspect or examine the car to discover whether it was in a safe condition, the full measure of his duty being to exercise ordinary care for his own safety, which prohibits him from voluntarily going into dangers apparent to him or by his own negligence converting a safe place into a dangerous place in which to do his work.

Appellant's evidence is very vague and indefinite as to the extent to which the light shone in the room, but it is clearly apparent from his evidence that either he could see and distinguish objects in the room, or he was so well acquainted with the conditions that he knew where the boxes of rice had been placed and could

readily place his hands upon them. The manager was not present or directing him in the performance of his work nor giving him any commands or assurances of safety in the way he was performing it. Appellant had been at work at the store for several weeks and had often gone into the wareroom. If the floor gave under one's weight in walking over it in such a way as was calculated to cause boxes stacked on it to topple, he was acquainted with that fact. His evidence indicates that the break which he saw in the floor was caused by the falling of the boxes and was not the cause of the boxes falling. There is nothing directly indicating or from which it may be reasonably inferred that any defect in the floor caused the boxes to fall, but even if there had been such a showing, there is a distinct absence of evidence to indicate that appellee knew or by the exercise of ordinary care could have known of such defective condition. If, as is claimed by appellant, the room was poorly lighted and the accident would have not occurred except for that condition, there was, according to his own evidence, facilities for properly lighting it, and notwithstanding the orders which he claims the manager gave with respect to the burning of the lights, he chose an unsafe rather than a safe way for performing his work. It is obvious from the evidence that the manager merely meant that the lights in the wareroom were not to be left burning except when necessary. If appellant voluntarily selected an unsafe way in which to do his work on this occasion when there was a safe way in which to do it and his selection of the unsafe way was the proximate cause of his injury, the master was not liable. Crouch v. Noland, 238 Ky. 575, 38 S. W. (2d) 471; Louisville Water Company v. Darnell, 189 Ky. 771, 225 S. W. 1057; Kentucky Distilleries & Warehouse Co. v. Johnson, 193 Ky. 669, 237 S. W. 3.

The master's failure to furnish his servant with a safe place in which to work or with safe appliances with which to perform his work does not create liability for injury if the servant knew that the place and appliances were not reasonably safe. Leatherwood Lumber Co. v. Hall, 252 Ky. 119, 66 S. W. (2d) 76; Kirby v. Hillside Coal Company, 106 S. W. 278, 32 Ky. Law Rep. 519.

Notwithstanding the commands of a superior, the master is not liable where the danger is obvious and the servant has knowledge of the dangerous situation and it is such that a man of ordinary prudence

would not incur the risk. Shemwell v. Owensboro & N. R. Co., 117 Ky. 556, 78 S. W. 448, 25 Ky. Law Rep. 1671; Bradshaw's Adm'r v. L. & N. Ry. Co., 21 S. W. 346, 14 Ky. Law Rep. 668; L. & N. Ry. Co. v. Davis, 199 Ky. 275, 250 S. W. 978.

In the light of these authorities it is apparent that the court did not err in directing a verdict for appellee.

Judgment affirmed.