## Phillips v. Corbin & Fannin.

(Decided November 10, 1915.)

### Appeal from Pike Circuit Court.

1. Master and Servant—Assumption of Risk.—The dangers which a servant assumes when he undertakes a work are such, only as are inherent in the work and grow out of its nature, in fact, only such dangers as are necessary.

2. Master and Servant—Assumption of Risk.—The risks arising from defective tools and appliances furnished to a servant by his employer are never assumed by the servant, as the risks assumed by a servant are a part of his undertakings in the contract of employment, and it being the duty of the master to use ordinary care to furnish the servant with reasonably safe tools and appliances, the servant has the right to assume that the master will perform his duty.

3. Master and Servant—Assumption of Risk.—A servant does not assume a risk arising from danger of injury from defective tools and appliances with which he is provided to do the master's work, unless he knew before the injury of the defects in the tools or appliances, or the defects and dangers in the tools and appliances are so obvious, that the performance of his duties will make the defects and dangers therefrom known to him, and he then continues in the work with the tools and appliances, after such knowledge, and fails to use ordinary care to save himself from such dangers.

4. Master and Servant—Assumption of Risk.—While it is the duty of the master to use ordinary care to provide his servant with

safe tools and appliances to do his work, he does not become liable to the servant, in damages, for injuries sustained by reason of the defective condition of the tools and appliances, unless the master knew of the defects, or could have known by the exercise of ordinary care, before the injuries were sustained.

J. S. CLINE for appellant.

ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE HURT.—Affirming.

The appellant, Eli Phillips, who was a young man of twenty-seven years of age, was employed by the appellees, Corbin & Fannin, in the operation of what is called a "lister," being a portion of the machinery of a mill, which was used in the manufacturing of staves for the making of barrels. The operation of the mill, and the persons engaged in working at it, were under the direction of Corbin, and Fannin resided at another place. The "lister" is a portion of the machinery of the mill, designed and used for the purpose of removing knots and rough edges from the sides of the stave bolts. It is constructed of four posts, four inches in width and the same in thickness, which were joined together near their ends by cross-pieces of timber, thus making a frame with four sides, each of which was of the same width and height. Across the top of the frame a mandrel was extended, which rested upon the top pieces of the frame, and upon each side was fitted into "boxing" made of cast iron, which was attached to the top pieces of the frame, and thus held the mandrel in position. A small circular saw, about eight inches in diameter, was fitted upon the mandrel. The mandrel passed through the saw at its center. The mandrel was connected with the motive power of the mill by a belt or other contrivance, which caused the mandrel to revolve, and thus gave action to the saw. Upon the top of the mandrel a small table was fixed. Through a slit in the table the saw revolved. About two inches of the saw protruded above the table and the remainder of the saw was beneath the table. The work of "listing" the stave bolts was accomplished by the operator taking the bolt in his hands and pressing it against the saw, when the saw would cut off the portion desired. A small guide post was attached to the table, at a distance of three or four inches from the saw, to control the action of the bolt and the portion cut off, to

prevent it turning backward toward the operator, and a narrow piece of board was nailed upon the side of the table to prevent the hands of the operator from coming in contact with the saw underneath the table. The work did not require on the part of the operator any great degree of skill, and the knowledge of how to do the work efficiently was acquired in a very short period of time, but the work from the nature of doing it and the appliances used was inherently and necessarily attended with considerable danger to the hands of the operator, if he failed to be careful and to observe his actions and the saw closely.

The appellant, while engaged in operating the "lister," as a servant of the appellees, suffered the misfortune of his hand coming into contact with the saw, which injured three of his fingers. This occurred on the 28th day of July, 1911. On the 18th day of July, 1912, he filed his petition, in ordinary, and thereafter an amended petition against the appellees, in which he claimed that the appellees negligently and carelessly failed to use ordinary care to provide him with a reasonably safe place in which to work, and reasonably safe appliances with which to do the work; that the table upon which the saw was operated had become defective and unsafe, and in "listing" the stave bolts, vibrated and shook; that an arm of the saw frame had become defective and loose, and by reason of the defective and unsafe condition of the table and arm of the saw frame, his hand was thrown against the saw and permanently injured; that he was inexperienced in the work, and was put to work with these defective appliances without being instructed as to the nature of the work or the manner in which it should be performed; that the appellees and their servants superior in authority to him knew or could with the exercise of ordinary care have known of the defective condition of the table and saw frame; and that the condition of same was not known to him and could not have been known by him by the exercise of ordinary care. He sought to recover the sum of three thousand dollars in damages.

The allegations of the petition and amended petition were all traversed either by answer or of record, and in addition the appellees plead that appellant was negligent and careless, and his injuries were caused by his own negligence, and but for such negligence upon his part

he would not have suffered same; and, furthermore, plead that the dangers which resulted in the injuries to appellant were incident to the labor in which he was engaged, and were known to him at and before his injuries or employment, and that they were such as were assumed by the appellant when he sought and was given the employment.

The allegations in regard to contributory negligence and assumed risk were controverted upon the record.

The trial of the case resulted in a finding by the jury in favor of the appellees, and a judgment was rendered accordingly.

The appellant moved to set aside the verdict and judgment and to grant him a new trial, which being overruled, he has appealed to this court.

The appellant insists that he ought to be granted a new trial because of errors made by the court, prejudicial to his substantial rights, in giving to the jury the instructions three and four, to which he objected at the time, and his objections being overruled, he excepted.

The instructions were given by the court upon its own motion, and to determine whether any error prejudicial to appellant's substantial rights was made in the giving of instructions, it will be necessary to consider the evidence heard upon the trial. The appellant testifying for himself stated, that he was twenty-seven years of age; that he had engaged before the time of his injuries in working at different duties about the mill and had seen the "lister" in operation, but had given it no consideration; that he was not shown or instructed as to the work or how it should be performed before engaging in it; that he had worked at "listing" stave bolts for only one day and the half of another day, when he received the injuries; that a brace, which supported the mandrel upon one end, was loose; that he discovered that it was loose, at once, after he commenced to work; that it fell down three or four times during the time he was employed, and that he would place it in position again; that when the brace would fall down, this would cause the saw to incline to one side; that the brace fell and caused the saw to incline to one side while he was "listing" a stave bolt, and the strip being cut from the side of the bolt, broke off, and that this had the effect of throwing his hand against the saw, underneath the table, and injuring his hand. He does not claim or state in his

evidence that there was anything unsafe about the place in which he was assigned to work, or that the table vibrated or shook, or that there was anything defective about the appliances, except in regard to the brace. He, furthermore, stated that at the times, that the brace fell down, that the appellee, Corbin, was in the mill and supervising and directing the operations of it, but he did not call the attention of Corbin to the unsafe condition of the "lister," arising from the defective condition of the brace, but he informed Holbrook of it, who was a hand working at the mill and whom he says had the duty of looking after the machinery, but who does not appear to have had any authority and whom he did not call as a witness. He does not claim or show that there was anything about the operation of "listing" the staves or the machine with which he was not acquainted at the time of the injury. He was wearing a pair of gloves at the time he was injured, but stated that he had not been informed by anyone that it was dangerous to wear gloves in doing such work. He admits having been warned by Cager Spradlin, a workman at the mill, that the work was dangerous and to be careful. He, further, stated that after he was injured, about three o'clock P. M., another proceeded with the operation of "listing" the stave bolts, until the coming of night; that he knew of the unsafe condition of the machinery by reason of the brace being loose and calculated to fall down during the operation of the machine, before the time of his injury, but did not know that the effect of its falling down would be to throw his hand against the saw.

The appellees introduced evidence which conduced to prove that appellant had been engaged in operating the "lister" six days, instead of one and a half days, at the time of his injury; that before he was permitted to begin "listing" stave bolts, that Corbin, one of the appellees, went with him and showed him the nature of the work and how to perform it, and cautioned him that the work was dangerous, if he did not exercise great care; that at the time of the injury the machine was in perfect repair; that there was no brace which would fall down or could possibly fall down; that the machine had been in use for some years before; and without any repairs, the use of it was continued for several months after the injury; that the appellant was careless in his work, and so much so, that other persons engaged at the

mill, before his injury, cautioned him in regard to it; that he did his work with canvas gloves upon his hands, and that he had been warned that to do so was unsafe and dangerous; that the appellant's work did not necessitate his putting his hands underneath the table, at all.

The court gave to the jury instructions, by the first of which it defined negligence and ordinary care. By the second instruction, the jury was in substance told that it was the duty of the appellees to furnish appellant with appliances which were reasonably safe with which to perform his work, and if the appellees negligently furnished to appellant a table, upon which the saw was operated, that was defective and vibrated and shook or that a brace of it was defective or loose, and that appellant was injured thereby, it should find for appellant, and, also, fixed the measure of his damages. This instruction seems to have been more favorable to appellant than he was entitled to. While it is a primary duty of the employer to furnish the servant reasonably safe appliances with which to work, and to exercise diligence to keep them in a reasonably safe condition, he is liable to the servant for damages resulting from such defects, only when he knew of the defective condition of the appliances, or should have known of it by the exercise of ordinary care, in his duty to know of their condition.

By the third instruction, the jury was told, in substance, that if the appellant suffered injury by failing to exercise that degree of care for his own safety, in the use and operation of the saw and table, which a person of his age, capacity, and experience would ordinarily use under like or similar circumstances, and but for want of such care upon his part, the injury would not have occurred, it should find for appellees.

In the light of instruction number two, the contributory negligence referred to in the above instruction, as a defense to appellant's cause of action, does not constitute a defense to any claim for injuries suffered by appellant on account of the alleged defective appliances with which he was working, but applies to his negligence in failing to exercise care for his own safety, in the manner of his doing his work and operating the saw, without reference to whether its condition was defective or otherwise. While this view of the law governing the case might have been more aptly stated, it does not appear that the jury could have been misled, when all of

the instructions are considered together, as the instruction clearly indicates that the contributory negligence referred to is not any negligence which would arise from knowingly operating defective and unsafe machinery by the appellant.

By the fourth instruction the jury was advised, in substance, that in undertaking the services for which appellant was engaged, he assumed all the risks ordinarily incident to the performance of such services, and that it was his duty to exercise ordinary care to protect himself from dangers incident to the employment, and if the appellant knew or by the exercise of ordinary care could have known that there was danger from the defective appliances upon which the saw was operated, and with such knowledge or means of knowledge, continued to work at the saw, and failed to take reasonable care to avert the danger and was thereby injured, the law was for the appellees and the jury should find for them.

This instruction was erroneous, in that it made the appellant to assume the dangers of an alleged defective appliance with which he was assigned to work, if by the exercise of ordinary care he could have known of the danger arising from the defect. The dangers which a servant assumes when he undertakes a work for an employer are such as are inherent in the work and grow out of its nature, and, in fact, are necessary dangers, and the servant, in the contract, undertakes the risks arising from such necessary dangers. In a contract of employment, a servant never assumes risks which arise from the use of defective tools and appliances provided for him with which to do his work. He has the right to assume that the master will perform his duty of providing him reasonably safe tools and appliances with which to work, and will exercise ordinary care to keep them reasonably safe. In fact, this is a duty the master cannot escape by delegating it to another. It seems that in Ashland Coal & Iron Co. v. Wallace, 19 R. 853, such an instruction as the above was approved with reference to the safety of a place in which to work, but in adjudications subsequent, that rule has not been adhered to. The rule which applies to risks assumed by a servant, arising from defective appliances, is that the servant does not assume a risk from a danger arising from a defective tool or appliance, unless he knows of the de-

fect and danger, or it is so obvious, that the performance of his duties will make it known to him and he then continues regardless of the defect and danger. If he knows of the defect and danger, or they are so obvious that the performance of his duties will make them known to him, he must exercise ordinary care to save himself from injury from them. Ahrens & Ott. Mfg. Co. v. Rellihan, 26 R., 919; Covington Saw & Mill Mfg. Co. v. Clark, 25 R., 694; Ohio Valley R. R. Co. v. McKinley, 17 R., 1028; Henderson Tobacco Co. v. Wheeler, 25 R., 495; Crab Tree Coal Min. Co. v. Samples' Admr., 24 R., 1704; A. & E. Enc. of Law, Vol. 20, P. 55: Pfisterer v. Peters, 25 R., 1605.

The instruction, however, could not have been prejudicial to the substantial rights of appellant, since appellant testified that he was fully cognizant of the alleged defects in the appliances to which he attributes his injury, and it is apparent that, if in the condition which appellant claims it to have been, the danger from it was obvious and patent, and the jury did not have to consider whether he could have known same by the exercise of ordinary care for his safety, since there was no testimony upon the subject except that of appellant, and there was no controversy, as to his knowledge of the defects alleged by him.

There being no error to the substantial rights of appellant, the judgment is therefore affirmed.

Judge Hannah, not sitting.