## Gibralter Coal Mining Company v. Nalley.

(Decided May 11, 1926.)

## Appeal from Muhlenberg Circuit Court.

1. Master and Servant—Complaint Failing to Allege Employer Knew of Unsafe Condition of Working Place Held Not to State Cause of Action.—Complaint for injuries, alleging failure of employer to exercise reasonable care to provide safe place to work, but failing to allege that defendant knew or by the exercise of ordinary care could have known of the alleged unsafe condition or that plaintiff did not know or by the exercise of care could not have known thereof, held not to state cause of action.

2. Master and Servant—Employer Not Accepting Compensation Act Cannot Assert Defenses of Contributory Negligence or Assumption of Risk (Workmen's Compensation Act [Ky. Stats., Sections 4880, 4987]).—Employer not accepting provisions of Workmen's Compensation Act (Ky. Stats., sections 4880, 4987) cannot assert defenses of contributory negligence or assumption of risk, in action for injuries to employe.

3. Master and Servant—Employe, to Recover for Injuries from Unsafe Working Place, Must Allege and Prove Employer's Knowledge of Unsafe Condition.—Employe, to recover for injuries from defective tools or unsafe place to work, must allege and prove that place was unsafe, and that such fact was known to employer, or by exercise of ordinary care could have been known to him, in time to have remedied defects, and that employe himself did not know, and by exercise of ordinary care could not have known, of dangerous condition.

4. Master and Servant—Evidence of Employer's Knowledge of Unsafe Condition of Working Place is Incompetent, in Absence of Averment of Fact.—Evidence that employer knew, or by exercise of ordinary care could have known, of unsafe condition of working place, is incompetent in absence of an averment of such fact, and cannot be basis of recovery.

EAVES & SANDIDGE for appellant.

LUKE TEAGUE and W. O. SMITH for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

Appellee, Nalley, a coal miner of six years' experience, was injured in his foot and ankle by the falling of coal while he was engaged in mining for appellant coal company in January, 1924, and instituted this suit in the Muhlenberg circuit court against the company to recover damages for its failure to exercise reasonable care to

provide him with a safe place in which to perform his work of mining and loading coal in its mines, and recovered a verdict for $400.00, upon which judgment was entered and from which judgment this motion for appeal is prosecuted.

While appellant company relies upon several grounds for reversal of the judgment, including the admission of incompetent evidence in the form of X-ray pictures, over its objection, we think its second complaint, "error of the court in refusing to direct a verdict in its favor," based upon the following statement taken from its brief, "The action is based on the alleged failure of appellant to furnish appellee a reasonably safe place to work. It is not alleged in the petition that appellant knew, or by the exercise of ordinary care could have known, of the alleged unsafe condition of the working place. Neither is it alleged that appellee did not know or by the exercise of ordinary care could not have known thereof. There being no cause of action stated in the pleading, a directed verdict should have been given," is sufficiently sustained by the record, to warrant the granting of the motion for appeal, and a reversal of the judgment. A brief statement of the facts is necessary to an understanding of the legal questions which we are about to consider. Appellant was driving an entry in the mines; this entry was about 10 feet wide; the coal was about five feet thick. On the left about eight feet from the face of the coal in the head of the entry, a cross-cut or breakthrough was laid off and started. Only a shot or so of coal had been taken from the breakthrough. In the middle of the entry was a track of steel rails about 42 inches wide on which the mining cars ran. The car extended out over the rails some six inches or more on either side; between the edge of the car and the face of the coal on the side of the entry next to the initiated breakthrough there was a space of about 36 inches, or a little bit less, from which the coal had been taken in driving the entry. The roof over this space was found to be dead and unsafe, and the company had caused its timberman to set a prop or post about six inches in diameter under this roof at a point about midway between the left-hand edge of the coal car and the rib of the coal on the left side of the entry, leaving a space of about 15 inches between the post and the rib and about 20 inches between the post and the edge of the car when standing

on the track opposite the post.  In mining the coal in the entry as well as in the breakthrough undercutting machines were employed by the company.  When the coal was undercut the miners, such as appellant, would drill holes into the face of the coal which was undercut, fill them with powder and fuse, in the afternoon, so that they might be fired at night by men employed by the company for that purpose.  The smoke would clear away before working hours next morning.  These methods were employed in the entry and breakthroughs where appellee, Nalley, was at work.  An undercut had been made in the breakthrough and he had drilled two holes into the coal, filled them with powder and fuse, and these had been fired on the night before his injury, bringing down a large heap of coal on the left-hand side of the entry near the post to which we have referred.  After loading out the coal from the head of the entry he set a mining car on the tracks near the breakthrough and just opposite the post; he then came around on the right of the car to its rear, by the post, passing between the post and the rib of coal to a point directly between the rib and the coal car, with the post at his back, and began to knock down the loose coal which had been shot the night before.  In doing this work he caused a large block of coal at the top of the pile to break loose and roll down towards his feet.  When he saw it coming, as he had seen many other such blocks, he undertook to step back out of its way and in doing so he ran against the post which we have described, and before he could get out of the way the block of coal rolled on to his foot and ankle, causing the injury of which he complains in this action.  The roof did not fall on him, but he says that his working place was dangerous and unsafe because the post was set as indicated above, not leaving enough room between the rib of the entry on the one side, nor sufficient room between the post and the edge of the car on the other side, for appellee to make his escape from large blocks of coal which might fall down as he pursued his work.

It is not alleged in appellee's petition, however, that his working place was dangerous and unsafe and that this fact was known to the company, or by the exercise of ordinary care could have been known to it long enough before the injury to have afforded it an opportunity to render the place reasonably safe, nor did he allege that the dangerous and unsafe condition of his working place, if any there were, was unknown to him.  The petition was

amended but no such averments were included in the amendment, that pleading relating only to the fact that the appellant coal company at the time of the injury of appellee had not accepted the provisions of chapter 137 of Kentucky Statutes, providing for an elective system of compensation for workmen injured while engaged in industrial pursuits, and pleading that the company was not entitled to rely upon contributory negligence or assumed risk on the part of the appellee as a defense. Appellant company's general demurrer to the petition was overruled. Appellant then traversed the averments of the petition and amended petition.

As the company was one which comes within the provisions of the Workmen's Compensation Act and had not accepted the terms of the act, and was not operating under it, the company was not entitled to rely upon the defense of contributory negligence or assumed risk. J. H. Vandivier & Sons v. Hardin's Admr, 201, Ky. 734; Clark County Construction Co. v. Richards' Admr., 202 Ky. 276; Gatliff Coal Co. v. Sumner, 196 Ky. 592; West Kentucky Coal Co. v. Smithers, 184 Ky. 211; Lamberg v. Central Consumers Co., 184 Ky. 284. But notwithstanding this, the company was not liable to appellee, Nalley, for the injury sustained by him unless and until it was alleged and proven that the company was guilty of negligence directly contributing to the infliction of the injury. If the negligence of the company did not proximately contribute to the bringing about of the injury of appellee, Nalley, he was not entitled to a judgment against it. His petition did not state a cause of action. As a general principle, often adhered to in this jurisdiction, a planitiff may not have a recovery in a tort case where he relies upon defective or insufficient tools or instrumentalities with which to work, or upon the failure of the company to furnish him a reasonably safe place in which to perform his duties, unless he allege and prove that the place was dangerous or unsafe and this fact was known to the master or by the exercise of ordinary care could have been known to him in time to have remedied the defects and made the place reasonably safe for the performance of the service required of the servant, and that the plaintiff did not know of the dangerous condition of the working place and could not have known thereof by the exercise of reasonable care on his part before the hap-

pening of the accident.    This principle is well expressed in 39 C. J., page 430, where it is said:

"The master's liability for injuries to a servant arising from defects in the place for work, or in the machinery or appliances, is dependent upon his knowledge, actual or constructive, of such defects. If he knew or should have known, by the exercise of reasonable care and diligence, of their existence, he is liable, negligent ignorance being equivalent to knowledge, but if he had no knowledge of the defects in such working place or in the machinery or appliances and his ignorance was not the result of want of due care, he is not liable." Cincinnati, etc., R. Co. v. Magee, 202 Ky. 722; Louisville, &c., R. Co. v. Wright, 199 Ky. 422; Hunsaker v. Chesapeake, etc., R. Co., 185 Ky. 686; Philips v. Corbin, 166 Ky. 638.

In Gabbard v. L. & N., 206 Ky. 474, it was expressly held that a petition which failed to aver either that the master knew of the dangerous and unsafe condition of the working place, or that the servant did not know of the danger or defect in the premises, failed to state a cause of action.    No cause of action having been stated in the petition the general demurrer of the defendant should have been sustained, and the defendant was entiled to a directed verdict in its favor at the conclusion of all the evidence, for the same reason.    The master is not liable in any event for failure to provide the servant with a reasonably safe place in which to perform his labor unless he knew or by the exercise of ordinary care could have known of such defective condition before the injury.    His liability depends upon his knowledge or opportunity for knowledge of the defective conditions of the working place before the injury, and if he has no such knowledge or opportunity for knowledge he is not liable.    The allegation of such knowledge without proof amounts to nothing, and the converse is equally as true. To prove that the company had knowledge of the defective condition in the mine, if such defective condition existed, without an averment in the petition of like effect, is as "sounding brass or a tinkling cymbal."  Such evidence, if any, in the absence of averment is incompetent. As the appellee failed to make out a case which entitled him to have his cause submitted to the jury the court should have sustained the company's motion for a di-

rected verdict in its favor. In failing to sustain this motion it committed prejudicial error necessitating a reversal of the judgment.

Motion for appeal sustained and judgment reversed for proceedings consistent with this opinion.