## Mannington Fuel Co. v. Ray's Administratrix.

(Decided Oct. 17, 1933.)

ALVAN H. CLARK, HUNTER WOOD and WHITE & CLARK for appellant.

JOHN STITES for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

Tom Ray and Nolie Dickerson were employees of the Mannington Fuel Company, and worked together as "buddies" in the loading of coal in its mine. They had been off duty for about a week when they returned to the mine to work. Ray had been employed by the Mannington Fuel Company for about four years. John G. Thomas was superintendent of its mines. Ray and Dickerson reported on the morning of February 17, 1930, and Thomas directed them to a certain room in which to begin work. This room had been shot and the coal partially loaded. Seymour Winders was loading coal in it when Ray and Dickerson arrived, and on observing it had been partially loaded they declined to assist in cleaning it up. The loaders were paid for their labor by the ton, and on account of the coal being partially "loaded out" they would be unable to earn as much money in the same period of time. They went to another point in the mine, about 8 o'clock in the morning, "and laid down beside the track and slept or rested until noon time." In the interim, Thomas, the superintendent, was making an inspection tour. On entering the room where Ray was subsequently injured, he observed loose rock which he believed necessary to be removed from the roof of the mine. On this account he returned to the switch where Ray and Dickerson were, to get information to the "timber man" to remove the loose rock so the machinemen could enter the room in safety, and begin cutting the coal. The timber man, on receiving the information from Thomas, preceeded to the room and removed the loose rock. Immediately after the timberman had completed his work, the operators of the cutting machine went to the room, set the machine, and cut back six or eight feet in the wall of coal on a level with the mine floor. After they had fin-

ished cutting the coal and pulled out the machine, the coal broke down, or came from the roof. The "draw slate" over the top of the coal was thus loosened, and settled on the coal. After the machinemen left the room the shooters entered it for the purpose of blasting loose the draw slate from the roof. They drilled the necessary holes, laid the explosive, and fired it, which caused the remaining draw slate to loosen from the roof and settle on the coal. After firing the shot, the men engaged in it proceeded to the point where the men were accustomed to gather to eat their lunch.

Thomas and other employees were at the point where Ray and Dickerson were resting on the track at different times, and they claim they had certain conversations with them. Dickerson disputes certain of their statements, and claims that Thomas directed them to go to loading the coal where Ray sustained his injury. These conversations at the present time are not material, and will not be considered, except incidentally.

Ray and Dickerson went to the room where the coal had been cut and the roof shot, and began to load coal, when a large slab of draw slate or rock fell and seriously injured Ray, which finally resulted in his death.

His mother qualified as administratrix of his estate and brought this action to recover damages for his death produced by the falling of the rock or slate upon him.

For her cause of action she avers that the Mannington Fuel Company was eligible to, but had not accepted, and was not working under the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.), and that Ray was its employee, and "while he was so engaged at his said work in the mine of the defendant, because of the gross negligence and carelessness of the defendant in failing to prop same up and sustain same, and in using insufficient, inadequate, unsafe and unsuitable props to sustain same, a large quantity of slate rock or coal fell upon him from the roof of said mine, breaking his back and totally paralyzing him, in which condition he lingered, suffering great pain, until the 5th day of October 1930, at which time he died as a direct result of his said injury. That his said injury and death were caused and occasioned solely by the gross negligence and carelessness of the defendant in failing

to furnish him a reasonably safe place in which to work, and in failing to have sufficient, adequate, suitable and secure props to support and sustain said roof and said slate, rock or coal, and because of the unsafe and dangerous condition of the said mine in which the said Ray was compelled to work by the defendant.''

The petition was traversed. On the issue thus formed a trial was had before a jury, resulting in a verdict in favor of the administratrix of $7,500.

The Mannington Fuel Company on this appeal is insisting that the petition does not state a cause of action, it was entitled to a peremptory instruction, and the court erred in its instructions to the jury.

It should be observed that the cause of action set forth in the petition is, the company insufficiently and inadequately, with unsafe and unsuitable props, propped the roof, and because of the unsafe and dangerous condition of the mine in which Ray was compelled to work by the defenadnt, he sustained the injury resulting in his death.

It is shown by the evidence that the room in which Ray was injured was a large one, before the coal was cut and the roof shot on the day he was injured. It is shown without contradiction that the room in its condition before the coal was cut and shot, immediately before he was injured, was not adequately, properly, or sufficiently propped, and that the roof was in bad condition. Ray's injury was caused by the falling of the rock or slate onto him while loading coal immediately below where the roof had been shot, within an hour or two hours before he was injured. The insufficiency of the props and the condition of the roof of the room beyond the space where he was working under the roof that had immediately been shot, did not produce his injury. It was the loading coal by Ray immediately beneath the roof which had just been shot while the same was in a dangerous condition, resulting directly from the shots, that produced, or was the proximate cause of, his injury, and not the condition of the roof elsewhere in the room, nor the absence or insufficiency of the props elsewhere in the room. Dickerson claims that he and Ray were directed by Thomas to engage in the loading of coal at the point where Ray was injured. This is disputed by Thomas. If the petition presented a cause of action arising out of the loading of coal by

Ray, at the place and under the circumstances shown by the evidence, it is apparent it would have been proper to submit the issue to the jury under appropriate instructions.

Conceding that the plaintiff in her petition stated a cause of action, it is very plain that the cause of action stated in it is not the cause of action shown by her evidence.

We have not been favored by a brief of the administratrix, and we are unable to know her theory of the case, except as it is represented by the petition and the evidence. If she was endeavoring by her petition to recover for the loss of the life of the decedent because he was loading coal at a point in the room where he was injured and it was an unsafe place because the roof had just been shot, and that he was working at such unsafe place because he was directed to load coal under the roof, it can not be disputed that the evidence supported such cause of action; but we find no allegation in the petition indicating such purpose of the pleader. It is not indicated in the petition that where such coal was cut by a machine and the roof immediately over it had been so recently shot, that careful mining required the use of props, or that it was practicable to prop the roof before the coal was removed. It is general knowledge that under such circumstances a system of inspection to ascertain and determine the dangerous condition of the roof immediately over the coal before it is removed is necessary and required.

The mining company being eligible, but failing to operate under the Workmen's Compensation Act, was deprived of the defenses of contributory negligence and assumed risk. Ray and his buddy were not charged with the duty to prop the roof, nor to inspect it. These duties devolved upon the foreman and such other employees upon whom the defendant imposed them. Though the company was deprived of the defenses of contributory negligence and assumed risk, and though it was not the duty of Ray and his buddy to prop or inspect the roof of the mine, yet the burden was on his estate to allege and prove negligence of the company to entitle it to recover. High Splint Coal Co. v. Baker, 147 Ky. 426, 57 S. W. (2d) 60.

It is a fundamental principle of the law of negligence as between the master and servant that, in order

for the servant to recover because of the master's failure to furnish a reasonably safe place to work, the servant must allege and prove that the place where he was working and sustained his injury was unsafe, and that such fact was known to the employer, or by the exercise of ordinary care could have been known to him in time to have remedied the defects, and, except where the Workmen's Compensation Act deprives the master of the defenses of contributory negligence and assumed risk, it is necessary for the servant to allege also that he did not know of the defects or unsafe condition. Gabbard v. L. & N. R. R. Co., 206 Ky. 475, 267 S. W. 558, Gibralter Mining Co. v. Nalley, 214 Ky. 431, 283 S. W. 416.

The petition sets up a cause of action based on negligence specifically described therein, as shown by the excerpt above. The evidence established different acts of negligence to those set up in the petition. The acts of negligence as described in the petition were not the proximate cause of Ray's injury. As shown by the evidence, the conditions that caused his injury were in the roof of the mine immediately over the coal which had just been shot, and which he was loading at the time of his injury. The petition cannot be interpreted to attempt to set up the cause of action shown by the evidence. It is not permissible under the accepted rules of practice for a plaintiff to state the facts constituting his cause of action and enjoy the liberty of making out his cause of action by giving in evidence facts establishing a different cause of action to that stated in his petition. Mize v. Godsey, 36 S. W. 169, 18 Ky. Law Rep. 287. Evidence establishing the theory of liability of a plaintiff not pleaded, when objected to, is incompetent. Hignite's Adm'x v. Louisville Neurophatic Sanitorium, 223 Ky. 497, 4 S. W. (2d) 407. An issue raised by the evidence, but not made by the pleadings, is not the issue in the case (Conley v. Boyd Oil & Gas Co., 220 Ky. 753, 295 S. W. 1025), for proof without pleading is as unavailing as pleading without proof. Louisville & N. R. R. Co. v. Whitaker, 222 Ky. 302, 300 S. W. 912. The Mannington Fuel Company objected to the evidence of the plaintiff at the time it was offered, tending to show the cause of action established by it. This preserved its right to complain in this court. Federal Fire Ins. Co. v. Harvey & Co., 225 Ky. 838, 10 S. W. (2d) 311.

In every case the instructions to the jury should be based on the pleadings supported by the evidence, and it is the duty of the court to confine the instructions to the issues made by the pleadings which are supported by the evidence. Hess' Adm'r v. L. & N. R. R. Co., 249 Ky. 624, 61 S. W. (2d) 299, and cases cited.

The petition, the evidence, and the instructions do not conform to these familiar principles. The instruction, given by the court, authorized a recovery in these words:

"It was the duty of the defendant, the Mannington Fuel Company, to furnish Tom Ray, the decedent, a reasonably safe place to work, and to load coal, and if the jury believe from the evidence that the defendant, through its foreman, or manager or its agents, failed to use ordinary care at the time and place mentioned in the evidence to furnish Tom Ray, while he was at work, whereby he was injured and died, the jury will find for the plaintiff, unless the jury believe as set forth in the second instruction."

It is apparent that this instruction does not present, as the proximate cause of the injury of Ray, the specific acts of negligence set forth in the petition. It attempts to authorize the jury to find for the estate if the Mannington Fuel Company failed to furnish Ray a reasonably safe place to work, but does so incorrectly and insufficiently.

The company filed a demurrer to the petition, which was not passed on by the court. Its right to complain of its not being disposed of by the court must be considered as waived. The petition setting forth the specific acts of negligence which rendered the place unsafe for the work of Ray, and it not being his duty either to prop or inspect the props or determine the sufficiently thereof, stated adequately the cause of action set up therein. It was the introduction of evidence showing other and different acts of negligence on the part of the company to that described in the petition that brings the case within the principles stated in this opinion. At the close of the evidence a peremptory instruction was offered by the company and refused by the court. Since the case must be reversed on other grounds, it is not necessary to consider its right to a peremptory instruction.

The judgment is reversed, with directions to award. a new trial, and for proceedings consistent with this. opinion.