## Glazer v. Hollywood Hat Shop et al.

(Decided Nov. 13, 1934.)

LUKINS & JONES and HERMAN COHEN for appellant.

CHARLES W. MORRIS for appellee Hollywood Hat Shop.

CRAWFORD, MIDDLETON, MILNER & SEELBACH for appellee Morris Goldberg.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Miss Helen Glazer brought this action against Harry Kasselberg, trading and doing business as the Hollywood Hat Shop, and Morris Goldberg, to recover for personal injuries. At the conclusion of her evidence the court directed a verdict in favor of the defendants, and she appeals.

The facts are: Morris Goldberg is the owner of a building at the southwest corner of Fourth and Market streets in Louisville. In the building are several stores fronting on Fourth street, and occupied by different tenants. The corner store, including the basement, was leased to F. G. Breskow, on November 29, 1930, for a period of thirteen months. Later on Breskow made an assignment, and the lease and store passed to Harry Kasselberg, of Peoria, Ill. The basement of the store was separated from the rest of the basement in the Goldberg building by a solid concrete wall. In the basement was a freight elevator leading to the sidewalk on Fourth street, and the opening in the sidewalk was covered by double iron doors. The elevator ran up in two steel tracks, and was operated by a windlass. The elevator was raised by means of an iron crank which revolved on a drum and wound or unwound the cable. Near the drum was a cogwheel or ratchet. There was a latch that slipped over the cogs while the elevator was being raised, and prevented its descent when placed in the cogs. There was also a device by which the latch could be locked when placed in the cogwheel. The crank was not permanently attached to the shaft, and as the elevator was lowered it would turn in the opposite direction. There was a hand brake by which the motion of the elevator could be controlled.

Miss Glazer was in the employ of Kasselberg as the manager of the store. There were sufficient employees to bring Kasselberg within the provisions of the Workmen's Compensation Act, but he had not elected to operate under the act. On the day of the accident Miss Glazer went to the basement for the purpose of looking after the shipment of some boxes of merchandise. When

the expressman came for the merchandise it was found that some of the boxes were too large to be carried by the stairway, and the janitor decided to take them up to the street on the elevator. To reach the street the doors had to be unlocked. In order to reach the lock the janitor raised the elevator and got on two boxes which he had placed on the elevator. On finding that he could not reach the lock, he, according to Miss Glazer, asked her to release the latch and crank the elevator up, and showed her exactly how to do it. This she did, and he then told her to put it back in the cog. She did that and stepped back. She then stood there watching the janitor, and when he unlocked the door he came all the way down on his feet, and after that the lever flew open and started the handle to spinning around, "and it just came off, striking me, and throwing me against the wall." The janitor gives substantially the same account of the accident, with the exception that he did not tell her how to raise the elevator. Miss Glazer very frankly admitted that she did not know what was the matter with the elevator, and that so far as she knew the elevator was all right. According to Milton Hoke, the janitor, the latch slipped out of the cog and let the elevator down. On being asked if there was anything wrong with the elevator, or with the way it worked, he gave the following answer: "No. It worked all right, only when you get a heavy load on it, you have to hold it real tight, because if you don't she will slip out on you." On cross-examination he testified as follows:

"Q. How do you put that latch in? A. You have to push down on it.

"Q. No trouble to do that? A. No trouble pushing down on it.

"Q. No trouble pushing down on it? A. No, sir.

"Q. Is there a lock that holds the latch in? A. If you push down on it real hard, then she stays in." In answer to the question, "Did that latch ever slip before?" he said:

"A. Oh, it has slipped, yes, sir. It slipped once with the paper man—we had a big box of paper on there, a big wooden box, and while he was winding it up, he stopped to say something and then it slipped, commenced going back, and he caught it himself.

"33. Was that reported to anybody, the fact that it slipped? A. You see, at the time, I—that little janitor, I seen him and I told him about this elevator slipping. He always told me to put it in tight and it wouldn't slip."

Prentice Martin, who formerly worked for Morris Goldberg, testified that he examined the elevator occasionally, and that so far as he knew it was in good condition, and no complaint had ever been made to him about it. Roy Shaddick, the expressman who was present at the time of the accident, did not see Miss Glazer put the latch in place after raising the elevator, or hear Hoke tell her how to do it. He did not see the crank fly off, but stated that the plaintiff was close enough to be hit by the handle as it revolved.

There was further evidence that after the execution of the original lease to Breskow, Morris Goldberg, in consideration of being permitted to place certain articles in the basement, agreed to look after the elevator.

Whether, if it had been shown that the elevator was defective, Goldberg could have been held liable on the ground that after the execution of the written lease he had orally agreed to look after the elevator, we deem it unnecessary to decide. Nor do we find it necessary to decide whether Kasselberg owed any duty to appellant; in view of the fact that he was absent from the state, and she was his vice principal, and of the further fact that she was not employed or expected to operate the elevator. Before either could be held liable it was necessary to show that the elevator was defective, and that he knew of its defective condition, or could have known of it by the exercise of ordinary care. Gibralter Coal Mining Co. v. Nalley, 214 Ky. 431, 283 S. W. 416. Not a single witness testified that the elevator was in a defective condition. Appellant admitted that its condition was all right, so far as she knew. It is true that the janitor testified that the latch slipped on the occasion in question, and had slipped once before at some prior indefinite time when being operated by certain expressmen; but he supplements this evidence by the statement that in order to put the latch in you have to push down on it, that there was no trouble in pushing down on it, and that if you push down on it real hard, then it stayed in. In short, the uncontradicted evidence shows that the latch would not slip when properly operated,

and the mere fact that it did slip when handled by appellant, who had never operated an elevator before, or that it slipped on some prior occasion when operated by expressmen, who were not shown to have been experienced in handling an elevator, is no evidence that the elevator was in a defective condition. It not being shown that the elevator was in a defective condition, it follows that the directed verdict was proper.

Judgment affirmed.