## Read et al. v. Carter.

(Decided Oct. 16, 1936.)

W. D. GILLIAM for appellants Porter and Hurt.

A. J. OLIVER for appellants Read and Dalton.

HARPER & GOAD for appellee.

OPINION OF THE COURT BY JUDGE STITES—Reversing in part and affirming in part.

This is an appeal from a judgment of the Allen circuit court based on the verdict of a jury in the sum of $650, in favor of appellee, W. A. Carter, and against the appellants. Carter was injured while operating a circular saw, suffering the loss of all of the fingers of his left hand, except the little finger. The proof indicates that the appellants Jack Read and Halqua Dalton in the early part of 1934 determined to embark on the operation of a sawmill in Allen county, and for this purpose pooled certain machinery and equipment belonging to each of them, and further agreed to give their joint services to the project. In order to secure capital for the purchase of timber and for the payment of hands at the mill, an agreement was entered into between Read and Dalton and the appellant Dr. C. V. Porter to the effect that Porter would furnish whatever funds were necessary in consideration of receiving 50 per cent. of the profits derived from the operation of the mill. Porter, in turn, not having himself sufficient funds to make the necessary advancements, either secured a loan from the appellant Sellus Hurt, or at least secured a line of credit from Hurt, and drew on him from time to time as the exigencies of the business required. In consideration of this loan, or line of credit, Porter agreed to pay Hurt one-half of his (Porter's) share of the profits as interest. It is indicated that Read usually went to Porter and secured the cash necessary for the payment of hands and the purchase of timber, but on one occasion or more the employees were paid by Dr. Porter's check, and possibly by the check of Sellus Hurt signed by Dr. Porter as his agent. It was alleged in the petition, and asserted by appellee at the trial, that three or more employees were regularly engaged in the operation of the mill, in addition to Read and Dalton, and that the mill was not operated under the Workmen's Compensation Law (Ky. Stats. sec. 4880 et seq.). It is argued for appellants that neither Read nor Dalton were experienced sawyers, and that Carter, the appellee, was employed to

have exclusive charge of the operation of the saw, he having had twenty-five years' experience as a sawyer.

On March 9, 1934, the date of Carter's injury, it is claimed by him that the blade of the saw had "bucked" or become out of line, with the result that its operation was rendered more dangerous, and it required a considerably increased amount of pushing on the part of the operator to get a log past the blade. It is claimed by appellee that he called the attention of the appellant Read to the dangerous condition of the saw, and that Read advised him to proceed with the operation in which he was then engaged. Read, on the other hand, categorically denies that he had any conversation with Carter on the subject, and it is insisted that the same blade was used by another sawyer for a period of about ten days after Carter's injury without any evidence of the blade's being out of line. It is further urged that Carter was in exclusive charge of the saw, and that there was another blade at the mill, of a smaller size than the one he was using, which he could have substituted had he been so minded or if in fact the blade he was using was defective. It was further asserted that a "bucked" saw would not leave a smooth surface where it had cut, and the transcript of the testimony indicates that the log on which Carter was working at the time of the injury was exhibited to the jury and presented a smooth surface where it had been sawed.

There is a complete divergence in the evidence, not only on the material facts as above outlined, but as to other claims or assertions not necessary to be recited here. The case was appropriately within the province of a jury, and we cannot, of course, undertake to weigh the conflicting evidence even though we might reach a different conclusion from that determined by the jury. For the appellants it is contended: (1) That their demurrers to the petition should have been sustained; (2) that a master is not liable to a servant for injuries received by him in carrying on his duties under the direction of the master where the danger is obvious and a man of ordinary prudence would not incur the risk; (3) that the court erred in refusing a peremptory instruction to the jury to find for the appellants; and (4) on behalf of appellants C. V. Porter and Sellus Hurt it is contended that they were not partners with Read and Dalton and that the court therefore erred in submitting the

case to the jury as to them for this reason, aside from all others.

It is argued that the petition shows on its face that Carter knew of the alleged dangerous condition of the saw which he was operating, and that the allegation in his petition to the effect that the saw was out of line, and "that he had so advised defendants and they were aware of the dangerous condition of said saw," demonstrates that appellee had no cause of action. Appellants rely upon the decision of this Court in the case of Brooks v. Arnett, 253 Ky. 491, 69 S. W. (2d) 1029, 1030, wherein it was said:

> "Where the plaintiff relies upon defective tools or instrumentalities or upon the failure of his employer to furnish him a reasonably safe place in which to work, he must allege and prove a knowledge of the danger by the defendant and want of such knowledge of danger by himself."

The statement in Brooks v. Arnett is based upon the opinion in the case of Gibralter Coal Mining Company v. Nalley, 214 Ky. 431, 283 S. W. 416, where the rule is stated in substantially the same form. In the Gibralter Coal Mining Company Case there was no showing that the master knew, or in the exercise of ordinary care should have known, of the alleged unsafe condition of the place in which the servant was required to work. The question of the knowledge of the servant was not materially involved, for there was no showing of negligence on the part of the master. The authority there cited for the statement that the servant must affirmatively allege his lack of knowledge of the dangerous or unsafe condition of the place where he was working is the case of Gabbard v. Louisville & N. R. Co., 206 Ky. 474, 267 S. W. 558. That, however, was a case arising under the Federal Employers' Liability Act (45 U. S. C. A. secs. 51-59), which abolishes the defense of assumption of risk only in those cases where the master's negligence consists in a violation of the terms of that act. The correct rule is thus stated in Mannington Fuel Co. v. Ray's Adm'x, 250 Ky. 736, 63 S. W. (2d) 933, 935:

> "It is a fundamental principle of the law of negligence as between the master and servant that, in order for the servant to recover because of the master's failure to furnish a reasonably safe place

to work, the servant must allege and prove that the place where he was working and sustained his injury was unsafe, and that such fact was known to the employer, or by the exercise of ordinary care could have been known to him in time to have remedied the defects, and, except where the Workmen's Compensation Act deprives the master of the defenses of contributory negligence and assumed risk, it is necessary for the servant to allege also that he did not know of the defects or unsafe condition.''

Where the servant is put to work to make a dangerous place or a dangerous tool safe, there is no negligence on the part of the master unless the servant does not know of the danger and the master fails to warn him of it. In other words, the negligence in these cases consists in the failure to warn. On the other hand, where the negligence relied on is the failure to furnish a safe instrumentality or a safe place to work, the master's negligence consists per se in the failure to furnish safe tools or a safe place. In this situation, even though the servant goes ahead with the instrument, or continues to work in an unsafe place, his assumption of risk, or contributory negligence, is no bar where the employer is eligible to operate under the Workmen's Compensation Law but elects not to do so. It follows that the petition in the case at bar was not defective in failing to negative the knowledge of Carter of the defective condition of the saw with which he was working.

What we have said with regard to the distinction between cases arising under the Workmen's Compensation Act and under the Federal Employers' Liability Act in connection with the dictum contained in the Gibralter Coal Mining Company Case, supra, is applicable also to the decision in Steely v. Great Atlantic & Pacific Tea Co., 256 Ky. 586, 76 S. W. (2d) 900, 902, and other similar decisions relied on here by appellants. In the Steely Case it is said:

"Notwithstanding the commands of a superior, the master is not liable where the danger is obvious and the servant has knowledge of the dangerous situation and it is such that a man of ordinary prudence would not incur the risk."

The cases cited in support of the quoted statement

are all railroad cases, and not cases coming within the scope of the Workmen's Compensation Law. Conceivably, there might be a situation where the negligence of the servant was so flagrant as to be the sole proximate cause of the injury notwithstanding the direction of the master, but certainly in the ordinary case where a servant goes ahead under the direction of the master, even with knowledge of the dangerous condition, there is nothing more than an assumption of risk, which, as we have seen, is eliminated as a defense where the employer is eligible to operate under the Workmen's Compensation Law but has elected not to do so. There is nothing in the testimony before us which would establish that the operation of a "bucked" saw was so extremely dangerous that a sawyer of ordinary prudence would decline to operate it even after he was directed to do so by his employer. In fact, if we accept appellee's story, as we must on the issue of a peremptory instruction, he operated the saw without injury for four or five days before the accident, although its defective condition then existed.

Finally, it is argued on behalf of the appellants Porter and Hurt that they were not partners with the appellants Dalton and Read, and that the trial court should therefore have given a peremptory instruction to the jury to find for them even though the case was properly submitted as against the other appellants. "Ordinarily, those persons are partners who contribute either property or money to carry on a joint business for their common benefit, and who own and share the profits in certain proportions, but the receiving of part of the profits of a commercial partnership in lieu of, or in addition to, interest by way of compensation for a loan of money, does not make the lender a partner." Edwards v. Johnson, 219 Ky. 113, 292 S. W. 750, 751. There was evidence from which the jury could infer that the appellant Porter had advanced funds as a contribution to the working capital of the partnership under his agreement with Dalton and Read to receive 50 per cent. of the profits—not simply as interest on the money, but as a return on his contribution to the joint undertaking. It was for the jury to say whether or not his advancements were in fact contributions to the partnership or mere loans. Jewell v. Janes, 238 Ky. 63, 36 S. W. (2d) 875.

As to the appellant Sellus Hurt, on the other hand,

the proof is clear and uncontradicted to the effect that he made a mere loan, the principal of which he expected to receive back from Dr. Porter, and as interest on his loan he agreed to take one-half of the profits paid to Dr. Porter. Clearly, this arrangement did not make Hurt a partner with Dalton, Read, and Porter, or establish a relationship of master and servant between him and appellee. It follows that he was entitled to the peremptory instruction for which he asked, and that the trial court erred in refusing it.

On the appeal of Sellus Hurt, the judgment is reversed. As to the other appellants, the judgment is affirmed.

Whole court sitting.