# Mason v. Redwine et al.

January 12, 1951.

Rehearing denied March 16, 1951.

R. C. Littleton, Judge.

H. R. Wilhoit for appellant.

Marcus C. Redwine, Virgil H. Redwine and Eugene Siler for appellees.

JUDGE SIMS—Affirming.

On Feb. 24, 1944, Marcus C. Redwine, joined by other heirs of A. T. Redwine, conveyed a farm of 169 acres located in Elliott County to Matthew Mason in consideration of $1,000. The deed reserved to the grantors ''one-half of all minerals, of every kind, especially oil and gas, found upon or under said land.'' From certain negotiations leading up to the sale and execution of the deed, Mason, who could neither read nor write, was of the impression the deed only reserved one-half of the oil and gas, and that all other minerals were conveyed to him. Hence, he brought this action on Feb. 23,

1949, to reform the deed on account of mutual mistake of the parties thereto, and on the further ground that the agent of Redwine had made false representations to Mason as to the reservation in the deed.

The chancellor heard the evidence, which is here on a bill of exceptions, and in a clear and concise opinion he dismissed the petition because there was no evidence of mutual mistake, nor any showing of misrepresentations upon the part of Redwine's agent. Appellant argues in his brief the judgment should be reversed because of mistake upon his part and the unconscionable and inequitable conduct upon the part of Redwine; while appellee takes the position that appellant is estopped, since he did not bring suit until five years after accepting the deed.

There is but little conflict in the evidence, which substantially shows these facts. Appellant, an illiterate man, had lived upon this farm for a number of years and was a tenant of Marcus C. Redwine, who resided in Winchester. On Nov. 30, 1943, appellant through his wife wrote Redwine he would like to buy the farm. Redwine replied by letter that he would sell it but wished to retain one-half of the oil and gas, stating "If you owned the land and the timber and coal that would give you a mighty good farm." Redwine wanted $1,200 for the place and Mason only offered $800, saying in another letter written by his wife on Dec. 15, 1943, "We desided the land timber cole and haf of the oil and gas is worth about $800 it that about rite if it hant make me a price * * * ,"

Redwine met Roscoe Skaggs in Cattletsburg at federal court. As Skaggs had been superintending some lands for Redwine, he asked Skaggs what was a fair price for this land. Skaggs thought the land was worth $1,000 and recommended to Redwine that he sell it to appellant for this sum, which Redwine agreed to do. Nothing was said in the conversation between Skaggs and Redwine relative to the reservation of the minerals. On Feb. 24, 1944, Redwine wrote Mason he was mailing the deed to Skaggs, who would deliver it to Mason and for the latter to sign and mail to Redwine the note for the balance of the purchase price. In that letter Redwine told Mason to read the deed over carefully "to see

if we have the right farms described and if there is any mistake, and send it back."

Skaggs' testimony was that the deed was sent to Mason, who brought it to him (Skaggs) to look over while the latter was digging coal; that he did not read the instrument carefully but thought it was all right and so informed Mason. The testimony of Mason is that Skaggs looked over the deed and said, "He didn't see anything wrong with it." Both Skaggs and Mason were of the impression that Redwine was reserving only one-half of the oil and gas and Mason was getting all other minerals. Redwine testified that when he reduced the price of the land from $1,200 to $1,000 he decided to reserve one-half interest in all the minerals and he purposely and intentionally incorporated such a reservation in the deed.

It is apparent under the evidence there was no mutual mistake, and it is just as apparent no misrepresentations were made by Skaggs to Mason. Appellant in his brief argues with much force and some persuasion that he was laboring under the mistake the deed reserved only one-half of the oil and gas, and that Redwine's conduct was inequitable and unconscionable in not calling to his specific attention the fact the deed reserved one-half of all the minerals, and in such circumstances equity will grant the relief appellant seeks. He cites such cases as Scott v. Spurr, 169 Ky. 575, 184 S. W. 866; Connecticut Fire Ins. Co. v. Oakley Improved Bldg. & Loan Co., 6 Cir., 80 F. 2d 717; Elliott v. Sackett, 108 U. S. 132, 2 S. Ct. 375, 27 L. Ed. 678.

These authorities support appellant's legal proposition. However, they are not applicable to the instant case because Mason's petition seeks a reformation of the deed on two grounds: 1. mutual mistake; 2. misrepresentations by the agent, and there is no averment in the petition that Redwine's conduct was unconscionable or inequitable. The last paragraph in the Scott opinion states the petition there, although awkwardly drawn, did plead mistake of one of the parties and unconscionable and inequitable conduct by the other when the averments are taken as a whole. As was said in Mannington Fuel Co. v. Ray's Adm'x, 250 Ky. 736, 63 S. W. 2d 933, one may not plead facts constituting a cause of action and then make out his case by introducing proof estab-

lishing a different cause of action to that pleaded. So here, Mason may not obtain a reformation of this deed by proving a mistake upon his part and what he claims is unconscionable and inequitable conduct upon the part of Redwine when his pleading asked for a reformation of the instrument on account of mutual mistake, or mistake upon his part and misrepresentations upon the part of Redwine's agent.

Having reached this conclusion, it becomes unnecessary to consider the contention of Redwine that Mason by accepting the deed and living on the property was estopped from bringing this action five years thereafter.

The judgment is affirmed.